UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE TERRAVIA HOLDINGS, INC. SECURITIES LITIGATION

Case No. 16-cv-06633-JD

**ORDER RE MOTION TO DISMISS**

Re: Dkt. No. 67

This is a securities class action against TerraVia Holdings, Inc. ("TerraVia" or "Company"), its former CEOs Jonathan S. Wolfson and Apurva S. Mody, and former CFO and COO Tyler W. Painter. Plaintiffs, the TerraVia Investor Group, brought suit on behalf of all persons or entities who purchased or otherwise acquired TerraVia's publicly traded securities between May 4, 2016 and November 6, 2016, under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5. Dkt. No. 39 ¶¶ 1, 20. Plaintiffs allege in the consolidated complaint that defendants made public statements about the commercial viability of its algae-based food products with knowledge of non-public information that rendered those statements false and misleading. *See id*. ¶¶ 7-11, 19.

After TerraVia filed for bankruptcy in August 2017, the case proceeded against Wolfson, Mody and Painter. Dkt. Nos. 49, 57. A motion to dismiss filed on behalf of both TerraVia and the individual defendants, Dkt. No. 41, was terminated without prejudice to refiling on behalf of the individual defendants only. Dkt. No. 64. Defendants moved to dismiss for failure to state a claim, citing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). Dkt. No. 67. Defendants say the

complaint should be dismissed because it fails to adequately plead (1) falsity, (2) scienter, and (3) loss causation.

Dismissal is warranted for several claims, but defendants' statements about the commercial viability of their algae food ingredients while they were in possession of adverse non-public knowledge are actionable. The heightened pleading requirements under Federal Rule of Civil Procedure 9(b) and the PSLRA are satisfied for those statements. Consequently, the motion to dismiss is granted and denied in part, and plaintiffs will have an opportunity to amend the dismissed claims.

**BACKGROUND**

As alleged in the complaint, TerraVia produced and sold food, nutrition and specialty products developed from algae. Dkt. No. 39 ¶ 2. The company began in 2003 as a biofuel startup seeking to develop an algae-based oil that could replace traditional fuel. *Id.* ¶¶ 3-4, 41-42. Despite initial success, the biofuel market "soured," and the company pivoted to other algae-based products in the cosmetics and nutrition industries. *Id.* ¶¶ 48, 54-55, 58. As early as 2014, the company began commercializing its AlgaVia and AlgaWise food ingredient products consisting of algae powders and algae-based food oils. *Id.* ¶¶ 58-61. These ingredients were touted as "healthier alternative" sources of protein and lipids, and sold to food manufacturers. *Id.* ¶ 59. In March 2016, the company rebranded as TerraVia and focused primarily on its food and nutrition products. *Id.* ¶¶ 5, 62-66. On August 2, 2017, while this lawsuit was pending, TerraVia filed for bankruptcy. Dkt. No. 48.

Central to the complaint are TerraVia's partnerships with two food manufacturers that used TerraVia's algae-based products as ingredients: Honey Stinger and Soylent. Honey Stinger used TerraVia's products in its protein chewable tablets. Dkt. No. 39 ¶ 68. In April 2016, Honey Stinger recalled its tablets "after customers reported becoming violently ill." *Id.* Honey Stinger and its third-party manufacturer, Santa Cruz Nutritionals of California ("Santa Cruz"), investigated the cause of the illnesses and, by process of elimination, "reached a finding of near-certainty that TerraVia's algae product was the problem." *Id.* ¶¶ 72-74, 82. Plaintiffs include testimony about the internal investigation from four confidential witnesses employed by Santa

Cruz, Honey Stinger, and Honey Stinger's parent corporation. *Id.* ¶¶ 70-81, 85-89. One of the confidential witnesses reported that by May 2016, Honey Stinger had notified TerraVia that its "algae ingredient was the cause of the sick customers." *Id.* ¶ 82. On June 27, 2016, TerraVia responded to Honey Stinger's notification with a letter acknowledging that "[t]here have been a modest number of reports of adverse gastrointestinal (GI) reactions to products containing AlgaVia® Protein-Rich Whole Algae, but given all available data on usage they represent a very low incidence rate for the total amount of product consumed by the population." *Id.* ¶ 83. TerraVia did not publicly disclose the letter or any other information about the reports of adverse gastrointestinal reactions to its products. *Id.* ¶¶ 11, 84.

A similar series of events occurred with Soylent, which manufactures a popular "on-the-go food substitute" made from nutrient-rich powder mixes. *Id.* ¶¶ 90-91. In June 2016, Soylent introduced new versions of two of its products using TerraVia's "whole algal flour and high oleic algal oil." *Id.* ¶¶ 92-93. In October 2016, Soylent recalled its reformulated Soylent Bar after customers reported "a variety of gastrointestinal problems," including nausea, vomiting, and diarrhea. *Id.* ¶¶ 94-95. On October 27, 2016, Soylent stopped selling its powder drink product made from the same formula. *Id.* ¶ 97. Soylent determined that only customers who consumed its products formulated with TerraVia's algal flour had suffered adverse consequences. *Id.* ¶¶ 98-99. On November 7, 2016, Bloomberg published an article announcing that Soylent had identified TerraVia's algal flour as the cause of the recall, and that it "would be removing algal flour altogether from its product formulations." *Id.* ¶¶ 13, 125. The same day, TerraVia's share price fell $0.15 per share to close at $1.70, and another $0.20 to close at $1.50 on November 10. *Id.* ¶¶ 126-27.

Plaintiffs allege that, beginning in May 2016, defendants made false or misleading statements, and that the revelation of those statements' falsity in the Bloomberg article caused the subsequent stock drop. *Id.* ¶ 19. Plaintiffs identify eleven allegedly false or misleading statements. Dkt. No. 39-1. Ten of these statements were made during TerraVia's quarterly earnings calls in May, August and November 2016, and in corresponding press releases and SEC filings. The eleventh statement appeared on TerraVia's website throughout the class period.

3

1    Defendants say that the consolidated complaint does not satisfy the heightened pleading standards required in a securities fraud action. Specifically, defendants contend that (1) there was no duty to disclose any of the omitted information that plaintiffs allege rendered defendants' statements misleading; (2) many of the challenged statements are nonactionable; (3) plaintiffs fail to allege with particularity facts giving rise to a strong inference of scienter; and (4) the Bloomberg article published on November 7, 2016, cannot support plaintiffs' theory of loss causation because it did not reveal a fraud. Dkt. No. 67.

**DISCUSSION**

**I. Legal Standards**

Well-established standards govern this motion to dismiss. To comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating a motion to dismiss, the Court assumes that the plaintiffs' allegations are true and draws all reasonable inferences in their favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Sprewell v. Golden State Warriors*, 226 F.3d 979, 988 (9th Cir.), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001)).

Additional requirements apply because this is a securities fraud action. The circumstances constituting the alleged fraud must be stated with particularity under Federal Rule of Civil Procedure 9(b). *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604 (9th Cir. 2014). In addition, pursuant to the PSLRA, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state

4

with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). For each alleged misstatement or omission, the complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

"To plead a claim under section 10(b) and Rule 10b-5, [plaintiffs] must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 603 (citing *Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). Here, defendants do not contest elements (3) through (5), and so the Court focuses on whether plaintiffs have adequately pled falsity, scienter and loss causation.

## II. Section 10(b) Claim

### A. Misrepresentations or Omissions

Plaintiffs challenge eleven statements as materially false or misleading. Dkt. No. 39-1. Plaintiffs rely primarily on an omissions theory of liability, arguing that TerraVia "failed to disclose" that its "algal products caused gastrointestinal distress, including nausea and vomiting," and the failure to disclose these "aforementioned symptoms" rendered misleading all of TerraVia's statements about the health benefits and commercial viability of its products. *See id.* Defendants argue that TerraVia did not have a duty to disclose any reports of gastrointestinal distress, and that the challenged statements are not false because they are "accurate statements of historical fact" or are otherwise not actionable because they amount to "inherently subjective puffing." Dkt. No. 67 at 6, 10.

#### 1. Plaintiffs' general omissions theory and TerraVia's duty to disclose

Plaintiffs argue that all of TerraVia's statements were rendered misleading because TerraVia failed to disclose the reports that its products had caused gastrointestinal distress. Dkt. No. 39-1; *see also* Dkt. No. 70 at 4 ("Defendants made a series of materially false and misleading statements to *conceal their then-existing knowledge* that their algae products were known to cause GI distress among certain individuals." (emphasis added)). Section 10(b) and Rule 10b-5(b) "do

5

not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Federal securities laws and regulations "prohibit only misleading and untrue statements, not statements that are incomplete." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012). Statements "'cannot be considered in isolation,' but must be viewed 'in the context of their total presentation.'" *See Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) (quoting *Hughes v. Dempsey-Tegeler & Co., Inc.*, 534 F.2d 156, 176 (9th Cir. 1976)); *see also Huang v. Avalanche Biotechnologies, Inc.*, No. 15-CV-03185-JD, 2016 WL 6524401, at *4 (N.D. Cal. Nov. 3, 2016). TerraVia's failure to disclose reports of adverse gastrointestinal reactions and the associated recalls, without more, cannot sustain plaintiffs' fraud claims. But these omissions provide context that renders some of the other challenged statements materially misleading.

### 2. Materially misleading omissions related to the recalled products

While defendants were not under an affirmative duty to disclose the status of TerraVia's partnerships with Honey Stinger and Soylent, once they chose to publicly tout those partnerships, "they were bound to do so in a manner that wouldn't mislead investors." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008); *see also Matrixx*, 563 U.S. at 45 ("[C]ompanies can control what they have to disclose . . . by controlling what they say to the market."). Treating plaintiffs' allegations as true for purposes of the motion to dismiss, the Court focuses on whether the challenged statements were made misleading as a result of the failure to disclose the reports of adverse gastrointestinal reactions related to the Honey Stinger recall and the Honey Stinger recall itself.

A statement or omission is actionably false if it creates "an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Even if not objectively false, a statement "may be misleading if it omits material information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008-09 (9th Cir. 2018), *cert. denied*, 139 S.Ct. 2615 (2019). In these circumstances, disclosure is required when necessary to make "statements made, in light of the circumstances under which they were made, not misleading." *Id.* at 1009 (internal quotation marks omitted) (quoting *Matrixx*,

6

563 U.S. at 44). An omission renders a statement materially false "when there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" *Matrixx*, 563 U.S. at 38 (some internal quotation marks omitted) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).

Defendants contest the falsity of all challenged statements and omissions by arguing that plaintiffs fail to plead facts sufficient to show that ingestion of TerraVia's algae products was the true cause of the reported adverse gastrointestinal reactions. But the misleading nature of the challenged statements or omissions does not turn on whether TerraVia's algae products were correctly blamed for customers' gastrointestinal distress. Whether or not TerraVia's algae products were in fact to blame, the existence of such reports, and the fact that TerraVia's partners attributed their consumers' adverse reactions to TerraVia's algae products, was the sort of information that could render TerraVia's statements regarding the health benefits and commercial viability of its algae-based food products misleading.

A statement made by former CEO Wolfson during the May 4, 2016 quarterly earnings call illustrates this point. Wolfson stated that "AlgaVia Whole Algae Protein continues to gain traction with producers of protein-rich beverages and snacks like *Soylent and Honey Stinger*" and "food industry innovators, established food leaders, and established personal care leaders are *all embracing our products*." Dkt. No. 39 ¶ 105 (emphasis modified). Defendants say this statement was not contemporaneously false because it was made "before the two incidents that . . . triggered a duty to disclose." Dkt. No. 73 at 5. The complaint alleges otherwise. Honey Stinger was recalled in April 2016 and TerraVia was notified "as of May 2016" that Honey Stinger had identified the algae ingredient as the cause. Dkt. No. 39 ¶ 82. Because defendants failed to disclose the Honey Stinger recall and the reports of adverse gastrointestinal reactions, both the explicit reference to TerraVia's partnership with Honey Stinger and the claim that "all" food industry innovators and established food leaders were "embracing" its algae-based products were materially misleading. Whether Honey Stinger was correct to identify TerraVia's algae ingredient as the cause of its customers' gastrointestinal distress does not change the effect that TerraVia's

7

failure to disclose the adverse reports and related recalls had on the total mix of information available to investors.

Defendants suggest that TerraVia made adequate disclosures to investors in its Form 10-Q, pointing to the warning that TerraVia faced "an inherent risk of product liability claims and the associated adverse publicity." Dkt. No. 67 at 2, 9; *see also* Dkt. No. 68-1 at 40. This disclaimer does not render the challenged statements regarding TerraVia's partnerships with the manufacturer of Honey Stinger less misleading. The relevant risk regarding the reports of adverse gastrointestinal reactions and resulting recalls was not limited to the potential for product liability lawsuits.

Plaintiffs also challenge a statement from TerraVia's website advertising that its products have "[h]igh protein digestibility." Dkt. No. 39 ¶ 123. At a minimum, this unqualified statement is undermined by the reports that certain consumers suffered gastrointestinal distress and digestibility-related symptoms as a result of the recalled Honey Stinger and Soylent products. The complaint alleges that these statements appeared on TerraVia's website throughout the class period, including after both the Honey Stinger and Soylent recalls. *Id.* ¶ 124. As early as the date TerraVia received notice of the Honey Stinger recall, and no later than when it received notice of the Soylent recall in October 2016, TerraVia's unqualified statement that its products had "[h]igh protein digestibility" was materially misleading.

### 3. The remainder of plaintiffs' challenged statements are inactionable

The remainder of the claims are dismissed with leave to amend. Plaintiffs lump together many challenged statements covering a broad range of topics without stating with particularity why each statement is false or misleading. "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet" the PSLRA's standard for pleading falsity. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008) (discussing 15 U.S.C. § 78u-4(b)(1)). Additionally, a number of these statements are accurate statements of historical fact related to TerraVia's business and development, while others are clearly opinion statements that are puffery.

**General mission and descriptive statements:**

Plaintiffs proffer a number of TerraVia's general mission statements, which it repeated throughout the class period in its quarterly earnings reports. For example, plaintiffs challenge these statements from each of TerraVia's quarterly press releases and SEC Form 10-Q filings:

- "[T]he Company is well positioned to help meet the growing need of consumer packaged goods and established and emerging food manufacturers to improve the nutritional profile of foods without sacrificing taste . . . ." Dkt. No. 39 ¶ 101 (quoting Q1 2016 Press Release); *see also id.* ¶ 110 (same from Q2 2016 Press Release); *id.* ¶ 117 (same from Q3 2016 Press Release).

- "[T]he Company's mission is to create products that are truly better for people and better for the planet." *Id.* ¶ 101 (quoting Q1 2016 Press Release); *see also id.* ¶ 110 (same from Q2 2016 Press Release); *id.* ¶ 117 (same from Q3 2016 Press Release).

- "We are commercializing high-value oils and powder products to companies that primarily use them as ingredients." *Id.* ¶ 103 (quoting Q1 2016 Form 10-Q); *see also id.* ¶ 112 (same from Q2 2016 Form 10-Q); *id.* ¶ 121 (same from Q3 2016 Form 10-Q).

- "AlgaVia® Lipid Powder (commonly known as whole algae flour) and AlgaVia® Protein (commonly known as whole algae protein) are whole algae ingredients that can improve the nutritional profile of foods and beverages." *Id.* ¶ 103 (quoting Q1 2016 Form 10-Q); *see also id.* ¶ 112 (same from Q2 2016 Form 10-Q); *id.* ¶ 121 (same from Q3 2016 Form 10-Q).

Plaintiffs say that because TerraVia's products "caused gastrointestinal distress, including nausea and vomiting," they were not "truly better for people" and therefore the Company's "business and prospects were worse than represented." Dkt. No. 39 ¶¶ 102, 111, 118. They also contend that TerraVia's "algal products were not 'high-value' in that they caused the aforementioned symptoms, thus seriously diminishing their commercial viability." *Id.* ¶¶ 104, 113, 122.

Plaintiffs do not allege particularized facts establishing that these generic mission statements and product descriptions were false or misleading. A statement is false "when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 899 F.3d at 1008. Further, misleading statements "must be capable of objective verification." *Id.* (internal quotation marks omitted) (quoting *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017)). Although the feeling of positivity informing TerraVia's statements can be questioned, the

complaint does not allege facts showing that TerraVia's products lacked nutritional value or the advertised levels of proteins, lipids or other nutrients. In addition, phrases like "truly better" and "high value" are not objectively verifiable statements and are more akin to "inherently subjective 'puffing,'" which cannot provide the basis for a securities violation. *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 606. Unlike the challenged statements regarding the recalled Honey Stinger products, none of these statements are made materially misleading by failing to disclose the reports of adverse gastrointestinal reactions or the resulting recall.

For much the same reason, the challenged statements describing TerraVia's products as delivering "true and much-needed innovation," Dkt. No. 39 ¶ 100; "healthier," *id.* ¶¶ 105, 119; or providing "enhanced nutrition," *id.* ¶ 114, are also dismissed. These statements are generalizations that provide "nothing concrete upon which a plaintiff could reasonably rely." *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 606.

**Safety related statements:**

Plaintiffs challenge several statements declaring that TerraVia's products are safe to consume. For example, each of TerraVia's quarterly SEC filings included a statement that its products "received an FDA generally recognized as safe (GRAS) 'No Questions' letter." Dkt. No. 39 ¶ 103 (Q1 2016 Form 10-Q). *See also id.* ¶ 112 (Q2 2016 Form 10-Q); *id.* ¶ 121 (Q3 2016 Form 10-Q). Plaintiffs acknowledge that TerraVia did receive an FDA "No Questions" letter, but argue that it was nevertheless misleading for TerraVia to describe its products as safe at a time when there were "known reports of GI distress." Dkt. No. 70 at 7. That is an internally inconsistent claim, and no other allegations demonstrate falsity. Consequently, it cannot go forward.

So too for the statements from TerraVia's website that described its products as providing "an array of benefits" and as being "free of known allergens." Dkt. No. 39 ¶ 123. Plaintiffs suggest that such statements are materially false and misleading because "the Company's algal products created allergic reactions in consumers, including the aforementioned symptoms." *Id.* ¶ 124. But plaintiffs do not allege any facts establishing that the reported incidents of gastrointestinal distress were the result of allergic reactions or that TerraVia's products had no

10

potential health benefits. Plaintiffs have not adequately pleaded falsity with respect to these statements.

**CEO opinion statements:**

Plaintiffs challenge several statements made by TerraVia executives in quarterly press releases and during earnings calls, including:

- "We're excited about the momentum we're building at a time when consumer demand for healthier alternatives is on the rise." Dkt. No. 39 ¶ 100 (TerraVia CEO Wolfson, Q1 2016 Press Release).
- "[W]e believe we have all the pieces in place to deliver on this opportunity, anchor partnerships, commercial food grade manufacturing and operation and a portfolio of products that significantly enhance taste and texture, deliver an improved nutritional profile and economic sustainability." *Id.* ¶ 107 (TerraVia CFO and COO Painter, Q1 2016 Earnings Call)
- "We are excited about the opportunities we see to serve demand for healthier and more sustainable food and ingredient alternatives that are better for the people and the planet." *Id.* ¶ 109 (Wolfson, Q2 2016 Press Release).
- "Overall, we're making strong progress commercially in food and nutrition." *Id.* ¶ 114 (Wolfson, Q2 2016 Earnings Call).
- "Based on what I've seen in a very short time, we have the capability to deliver innovation to the food and nutrition industry for many years to come." *Id.* ¶ 116 (TerraVia CEO Mody, Q3 2016 Press Release).

Plaintiffs argue that these statements were materially false and misleading because "ingestion of the Company's algal products caused gastrointestinal distress, including nausea and vomiting," *id.* ¶¶ 102, 108, 111, 115, 118; and because TerraVia had "overstated the commercial viability of its algal products, and was therefore not making strong progress commercially in food and nutrition," *id.* ¶ 115.

All of these statements are opinions or opinions with embedded facts. An opinion statement is actionably false only: "(1) if the speaker did not in fact hold the stated belief; or (2) if the speaker omitted facts going to the basis for one's opinion that would make the opinion statement misleading to a reasonable person." *West v. Ehealth, Inc.*, No. 3:15-CV-00360-JD, 2016 WL 948116, at *8 (N.D. Cal. Mar. 14, 2016) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184-85, 194 (2015)); *see also City of*

11

*Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-16 (9th Cir. 2017). For an opinion with an embedded statement of fact to be actionable, plaintiffs must allege that the supporting fact the speaker supplied is untrue. *City of Dearborn Heights*, 856 F.3d at 616. Plaintiffs do not allege that any of the speakers did not subjectively believe their statements and, to the extent the speakers relied on any embedded factual statements, plaintiffs have not pleaded particular facts showing that any such statement of fact is untrue.

### B. Scienter

For each actionable statement or omission, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see also West*, 2016 WL 948116, at *9. The required state of mind is "scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 & n.12 (1976)). To constitute a "strong inference" of scienter, the inference raised by the facts alleged "must be more than merely 'reasonable' or 'permissible,'" it must be "cogent and at least as compelling as any opposing inference one could draw." *Id.* at 324. The relevant inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 323 (emphasis in original).

Plaintiffs say that a holistic reading of the complaint establishes scienter because TerraVia and the individual defendants withheld knowledge of the reports of adverse gastrointestinal reactions and related recalls during their quarterly earnings calls. Dkt. No. 70 at 2, 13. Defendants say that plaintiffs fail to allege facts related to the individual defendants' states of mind on the dates of the challenged statements. Dkt. No. 67 at 11. Defendants also contend that plaintiffs have not pleaded facts establishing whether and when defendants learned that Honey Stinger's manufacturer believed TerraVia's product caused its customers' gastrointestinal distress. *Id.* at 11-12. Defendants argue that, even when viewed holistically, the allegations in the complaint show only "that, at worst, TerraVia may have faced a problem." *Id.* at 13.

The complaint in its entirety sufficiently alleges scienter. After the Honey Stinger recall, TerraVia was notified "as of May 2016" that its algae ingredient had been identified by Honey Stinger's manufacturer as the cause of its customers' gastrointestinal distress. Dkt. No. 39 ¶ 82. While defendants contest whether Wolfson was notified of the cause of the recall before the May 4, 2016 earnings call, Dkt. No. 79 (June 21, 2019 H'rg Tr.) at 6:8-14, it appears undisputed that defendants would have been notified of such no later than June 27, 2016, when TerraVia issued the letter to Honey Stinger stating that it was aware of a "modest number of reports of adverse gastrointestinal (GI) reactions to products containing AlgaVia® Protein-Rich Whole Algae." Dkt. No. 39 ¶ 83. Defendants' failure to disclose even statistically insignificant reports of adverse effects is properly considered under a holistic analysis of scienter. *Matrixx*, 563 U.S. at 48-49. Those reports, coupled with two major product recalls, were more than just "a problem" for TerraVia.

Consequently, plaintiffs have sufficiently alleged scienter at the pleadings stage, and the Court need not consider plaintiffs' core operations or financing theories of scienter, *see* Dkt. No. 70 at 12-14, the latter of which is premised on factual allegations not found in the complaint.

### C. Loss Causation

Defendants contend that the Bloomberg article fails to establish loss causation because it does not constitute a corrective disclosure. Dkt. No. 67 at 14-15. To prove loss causation, plaintiffs "must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered" by plaintiffs. *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 608 (internal quotation marks omitted) (quoting *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1027 (9th Cir. 1999)). Like other elements of a securities fraud action, Rule 9(b)'s heightened pleading standards apply to loss causation. *Id.* at 605. As loss causation is "a variant of proximate cause, the ultimate issue is whether" defendants' statements or omissions, "as opposed to some other fact, foreseeably caused" plaintiffs' loss. *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (internal quotation marks omitted) (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016)), *cert. denied*, 139 S.Ct. 2741 (2019).

Plaintiffs have sufficiently alleged a causal connection between defendants' alleged misrepresentations and their loss. The Bloomberg article revealed that TerraVia's algae ingredients had been linked to the cause of the Soylent recall and that TerraVia had previously sent a letter to Honey Stinger acknowledging reports of adverse gastrointestinal reactions to its ingredients. Dkt. No. 39 ¶¶ 13-14. The article revealed that TerraVia had privately acknowledged earlier that year that its ingredients may have caused gastrointestinal reactions such as those responsible for the Honey Stinger recall, and that it had failed to disclose that information in its public statements regarding the commercial prospects of its food products and its partnerships with food manufacturers. Plaintiffs allege that TerraVia's share prices fell due to these disclosures. *Id.* ¶¶ 126-27.

Defendants say that the Bloomberg article did not reveal a fraud, or even a risk of or potential for fraud. Dkt. No. 67 at 14-15. That goes too far. The Bloomberg article is not akin to the mere announcement of an SEC investigation in *Loos v. Immersion Corp.*, 762 F.3d 880, 890 & n.3 (9th Cir. 2014), or the unsubstantiated consumer complaints in *Curry v. Yelp Inc.*, 875 F.3d 1219, 1225-26 (9th Cir. 2017). Rather, the Bloomberg article disclosed a prior omission about the Honey Stinger recall, along with the information that TerraVia's products had been linked to a second recall. Because the challenged omissions were directly related to TerraVia's representations regarding its relationship with Honey Stinger in particular and food manufacturers generally, plaintiffs' allegations about the Bloomberg article and subsequent stock price decline are sufficient to plead loss causation.

**III.  Section 20(a) Claim**

Defendants' motion to dismiss the Section 20(a) claim rests entirely on the argument that plaintiffs cannot establish liability under Section 10(b) and Rule 10b-5. Dkt. No. 67 at 15; *cf. Or. Pub. Emps. Ret. Fund*, 774 F.3d at 610 (holding that plaintiffs cannot establish control person liability under section 20(a) when "they have not adequately alleged violations of section 10(b) and Rule 10b-5"). Because plaintiffs have adequately alleged violations of Section 10(b) and Rule 10b-5, defendants' motion to dismiss the Section 20(a) control person liability claim is denied.

14

**CONCLUSION**

Defendants' motion is granted and denied in part. Plaintiffs may amend their complaint, consistent with the findings of this order, by March 2, 2020. The parties are directed to jointly file a proposed scheduling order by March 2, 2020.

**IT IS SO ORDERED.**

Dated: February 4, 2020

JAMES DONATO
United States District Judge